IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:19-CR-00461-IM |
| v. | **OPINION AND ORDER** |
| **JOSÉ CHÁVEZ-GARCÍA**, | |
| Defendant. | |

**IMMERGUT, District Judge.**

      Defendant José Chávez-García is charged with one count of illegal reentry after having been previously arrested and deported from the United States on June 4, 2011, in violation of 8 U.S.C. § 1326. ECF 1. Defendant Chávez-García now moves to dismiss the indictment, bringing a collateral attack against the removal order on which the indictment is predicated. ECF 34. He contends that the underlying removal order is invalid because his right to due process was violated during the removal proceeding. *Id*. This Court held a hearing on Defendant's motion on December 17, 2021. ECF 47. After considering the pleadings, the record, and the arguments of

counsel, this Court finds that Defendant's removal proceeding did not violate his due process rights. For the reasons below, Defendant's Motion to Dismiss the Indictment, ECF 34, is DENIED.

## BACKGROUND

Defendant Chavez-Garcia is a native and citizen of Mexico who first came to the United States in 1999. ECF 34 at 8. On April 2, 2002, Defendant was arrested and charged with sexual abuse in the second degree under ORS 163.425.[1] *Id*. The Polk County Juvenile Department referred Defendant to Immigration and Naturalization Services ("INS") on April 10, 2002. *Id*., Ex. D. The agent then lodged an immigration detainer against Defendant. *Id*., Ex. E.

On April 22, 2002, Defendant appeared before an immigration judge represented by counsel and assisted by a Spanish-language interpreter. ECF 34-2 at 1. Through counsel, Defendant acknowledged receipt of the Notice to Appear and admitted to all the allegations. *Id*.; *see also* ECF 34-10 (alleging that Defendant was "not a citizen or national of the United States" and was "a native of Mexico and a citizen of Mexico," who "entered the United States at or near El Paso, Texas on or about April of 2001 . . . [and was] not then admitted or paroled after inspection by an Immigration Officer"). Defendant requested voluntary departure under safeguards. ECF 34-2 at 1. The Immigration Judge then asked questions of Defendant, who represented that his only family in the United States was an uncle, that he did not fear harm or

---

[1] Defendant argues that this charge stemmed from a misunderstanding. Defendant, then seventeen, had been in a consensual romantic relationship with a girl, then fifteen, whose parents did not approve of their dating. ECF 34, Ex. A at 2. Defendant claims that the girl's parents incorrectly thought that she had been out with Defendant and missed curfew and called the police. *Id*. Defendant further claims that the charge was dismissed when the juvenile court found out that the relationship was consensual. *Id*. But a Memorandum of Investigation states that, although the charges were dismissed, they were dismissed without prejudice so that "if [Defendant] returns to the US, the DA can re-instate the charges against him." *Id*., Ex. G.

PAGE 2 – OPINION AND ORDER

persecution in Mexico, and that he wished to "be sent back" soon. *Id*. at 2. The Immigration Judge explained:

> IJ: You'll be sent back as soon as possible that way. And everything would be final. It would show a voluntary return on your record, but it would be by the Service. Do you understand that[?]
>
> CG: No[,] I don't understand that.
>
> IJ: Okay, well, there are two things that could happen. Removal is like a deportation, that's like an order or judgment against you. But there wouldn't be that. It would show a voluntary departure, but the [I]mmigration Service would take you back. And it would be done as soon as possible. And I'm willing to give you that if you want to accept it.
>
> CG: I just want the voluntary departure.
>
> IJ: Okay that's what I'm giving you. Do you understand that?
>
> CG: That you're giving me voluntary departure"
>
> IJ: Yes.
>
> CG: Yes.

*Id.* After confirming that Defendant understood the process, the Immigration Judge entered "voluntary departure in lieu of removal, without expense to the Government on or before May 6, 2002 . . . [u]nder [s]afeguards." ECF 34-12 at 1.

Neither Defendant nor any of his family members purchased him a ticket for a flight to Mexico in 2002. ECF 34-1 at 3. Nevertheless, a flight ticket was purchased for Defendant on April 30, 2002 from WorldTravel BTI. ECF 34-14 at 1. The itinerary was from Portland to San Francisco to Mexico City on May 3, 2002 and the ticket was delivered to "US

PAGE 3 – OPINION AND ORDER

IMMIGRATION/NATURALIZATION SVC D DEPORTATION DIVISION." *Id*. at 1. The $427.66 fare was paid by credit card. *Id*. at 3.

On April 26, 2002, before the ticket was bought, the Consul General of the Consulate of Mexico in Portland sent correspondence to the INS informing the agency "that relatives of the minor below have been located in Mexico" in "Morella, Michoacán."[2] ECF 34-16. Defendant alleges that when he arrived in Mexico City, he was attacked by thieves and was stranded without a way to contact his family until he happened to meet a woman from his region who was sympathetic and helped arrange overland travel to Morelia. ECF 34-1 at 3.

In May 2011, Defendant was arrested in Polk County, Oregon, for failure to appear. ECF 34-3. In an immigration interview, Defendant admitted to having entered the United States without inspection sometime in 2005 and denied fearing persecution or torture in Mexico. ECF 34-17 at 1–2. A records check revealed a misdemeanor conviction for failure to present an operator's license in Salem Municipal Court in 2005. *Id*. at 1.

Defendant appeared in front of an immigration judge on June 1, 2011. ECF 34-2 at 3. The hearing was interpreted into Spanish by an official court interpreter. *Id*. at 3–4. The Immigration Judge explained that the purpose of the removal proceedings was, first, to determine whether Defendant was removable from the United States and, second, to explore any ways in which Defendant may be able to remain. *Id*. at 3. The Immigration Judge further explained Defendant's right to counsel, to present evidence, to challenge the government's evidence, to choose a country of removal, and to challenge "any decision the court makes" to the court of appeals. *Id*. The Immigration Judge also noted that Defendant was provided with a list of organizations that

---

[2] Defendant's briefing refers to "Morelia," rather than "Morella." *See* ECF 34 at 14.

could provide low- or no-cost representation as well as a written explanation of appeals rights. *Id*.

Defendant confirmed that he understood the rights explained to him by the Immigration Judge and that he had no questions about those rights. *Id*. at 4. Asked explicitly if he wanted more time to secure counsel, Defendant responded, "No." *Id*. Asked if he was waiving his right to an attorney, Defendant responded, "Yes, I don't want to fight my case. I've got a sister in Mexico and when I came here she got very sick and I don't want to fight my case I just want to see if I can get a voluntary departure." *Id*. After Defendant admitted the allegations against him, the Immigration Judge found him removable as charged. *Id*. at 5. Defendant confirmed that he was not afraid to return to Mexico and that no one had filed a visa petition for him.[3] *Id*.

The Immigration Judge then considered voluntary departure. *Id*. at 6–7. Government counsel informed the Immigration Judge of the 2002 voluntary departure with safeguards. *Id*. at 6. The Immigration Judge then found that Defendant was not eligible for voluntary departure "because [he] already had the privilege once" and "there's no exception for . . . when [one was] a juvenile." *Id*. The Immigration Judge then inquired:

> IJ: That is my final decision sir, and do you waive your right to appeal?
>
> CG: Yes, but I can't reenter the United States legally if my wife claims me or—?
>
> IJ: You can't come back for a period of 10 years, sir. Not without special permission

from the United States government. If you do come back illegally, you can be subject to criminal penalties including fines, prosecution, and jail time. Do you understand?

> CG: Mmhmm

---

[3] Defendant did say that he believed his wife would file a visa petition if he were removed. *See* ECF 34-2 at 6.

PAGE 5 – OPINION AND ORDER

> IJ:   If the—No I need you to answer out loud. Do you understand—
>
> CG:   Yes.

*Id*. at 6–7. Defendant was removed on June 4, 2011. ECF 39-1 at 2.

On August 15, 2019, a deportation officer located Defendant in Clackamas County, Oregon where he was issued a citation for driving with a suspended license. ECF 34-23 at 2.

## STANDARDS

To convict a defendant of illegal reentry under 8 U.S.C. § 1326, "the government must prove that the alien left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015). A defendant may collaterally attack the validity of a removal order underlying a section 1326 indictment by arguing the administrative proceeding producing the order violated his Fifth Amendment right to due process. *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012). "[W]here a deportation proceeding violates an alien's due process rights, the Government may not rely on any resulting deportation order as proof of an element of a criminal offense." *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987)).

To prevail on a collateral attack of a section 1326 indictment, a defendant must show that: (1) he exhausted any administrative remedies available to seek relief against the order; (2) the deportation proceedings improperly deprived him of the opportunity for judicial review; and (3) the entry of the deportation order was fundamentally unfair. 8 U.S.C. § 1326(d). A removal order is "fundamentally unfair" if: (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding; and (2) he suffered prejudice as a result. *Martinez*, 786 F.3d at 1230.

DISCUSSION

A. **Defendant has not shown that he has exhausted any administrative remedies available to him, 8 U.S.C. § 1326(d)(1), or that the deportation proceedings improperly deprived him of the opportunity for judicial review, 8 U.S.C. §1326(d)(2).**

Defendant does not argue that he exhausted all administrative remedies and was deprived of judicial review. Instead, Defendant argues that his "circumstances" satisfy these procedural requirements. ECF 34 at 42–44. Defendant makes this argument last, after presenting his due process claims, on the theory that the 2011 removal proceeding was so fundamentally unfair that it excused him from exhausting his administrative remedies.

Defendant cites Ninth Circuit precedent that "[a]lthough 8 U.S.C. § 1326(d)(1) and (d)(2) are separate requirements, . . . where an alien is deprived of his right to appeal to the [Board of Immigration Appeals ('BIA')], he satisfies both (d)(1) and (d)(2)." *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013). Indeed, the Ninth Circuit has held that section 1326(d)(1) and (d)(2) are satisfied in "three overlapping categories": (1) if an immigration judge "failed to inform the alien that he had a right to appeal his deportation order to the BIA"; (2) if an immigration judge failed "to inform the alien that he is eligible for a certain type of relief . . . because an alien who is not made aware of his or her apparent eligibility for relief has had no meaningful opportunity to appeal the removal and seek such relief"; and (3) when an alien's waiver of his or her right to appeal to the BIA was not "considered and intelligent." *Id*. at 1130–31 (internal quotation marks and citations omitted).

The Supreme Court recently addressed Ninth Circuit precedent "'excus[ing defendants] from proving the first two requirements' of § 1326(d) if they were 'not convicted of an offense that made [them] removable.'" *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1620 (2021) (quoting *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017). About that exception, the

PAGE 7 – OPINION AND ORDER

Supreme Court held that "[t]he Ninth Circuit's interpretation is incompatible with the text of § 1326(d) . . . When Congress uses 'mandatory language' in an administrative exhaustion provision, 'a court may not excuse a failure to exhaust.'" *Id.* at 1620–21 (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016). The Ninth Circuit has since acknowledged that the holding in *Palomar-Santiago* "casts doubt on the continued vitality of our exhaustion excusal rule under § 1326(d)." *Zamorano v. Garland*, 2 F.4th 1213, 1225 (9th Cir. 2021). The Ninth Circuit has begun more rigorously applying the exhaustion requirement. *See United States v. Gonzalez-Valencia*, 3 F.4th 1208, 1210 (9th Cir. 2021) ("[Defendant] did not address any of the § 1326(d) arguments in his brief, claiming that he did not need to because the immigration judge lacked jurisdiction. . . . [Defendant]'s argument is foreclosed by *Palomar-Santiago*"); *Alam v. Garland*, 11 F.4th 1133, 1137 (9th Cir. 2021) (Bennett, J., concurring) (noting that the Ninth Circuit's exceptions to § 1326(d)(1) "appear[] to conflict with the Supreme Court's *Palomar-Santiago* decision . . . In my view, none of these rules survive *Palomar Santiago*" ); *United States v. De La Mora-Cobian*, 2021 WL 5561217 (9th Cir. Nov. 29, 2021) ("[Defendant] chose to waive this administrative review of his asylum claim, and such a failure to exhaust the statutory remedy constitutes a bar to collateral review [under § 1326(d)] of the deportation order now.").

But even if some excusals to exhaustion remain—which this Court does not find—Defendant is not entitled to excusal here. First, the Immigration Judge did not "fail[] to inform [Defendant] that he had a right to appeal his deportation order to the BIA." *Gonzalez-Villalobos*, 724 F.3d at 1130. The evidence here shows that the Immigration Judge informed Defendant that he had appeal rights. In a group with other defendants, Defendant was given a sheet containing his appeal rights, and the Immigration Judge later asked Defendant if he waived his appeal rights before entering the removal order. ECF 34-2 at 3, 6–7. *See United States v. Estrada-Torres*, 179

PAGE 8 – OPINION AND ORDER

F.3d 76, 781 (9th Cir. 1999), *overruled on other grounds by United States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001) (approving of an immigration judge informing a group of defendants of their appeal rights and then asking an individual defendant if he wanted to appeal his deportation order).

Second, such waiver was "considered and intelligent." *Gonzalez-Villalobos*, 724 F.3d at 1131. Defendant never expressed misunderstanding of his appeal rights, but he did express a desire to return to Mexico to see his sick sister rather than "fight [his] case." ECF 34-2 at 4.

Third, the Immigration Judge did not fail "to inform [Defendant] that he is eligible for a certain type of relief." *Gonzalez-Villalobos*, 724 F.3d at 1130. The Court acknowledges Defendant's contention that, if his voluntary departure in 2002 was invalid, then he may have been eligible for voluntary departure in 2011. Even so, there was no reason for the Immigration Judge in 2011 to know about the alleged defects in the 2002 voluntary departure, and so Defendant's eligibility could not have been "apparent." *See United States v. Lopez-Velasquez*, 629 F.3d 894, 901 (9th Cir. 2010) (en banc) (holding that an immigration judge must "inform the alien of a *reasonable* possibility that the petitioner may be eligible for relief" (internal quotation marks omitted) (emphasis added)); 8 U.S.C. § 1229c(c) ("The Attorney General shall not permit an alien to depart voluntarily under this section if the alien was previously permitted to so depart after having been found inadmissible.").

Regardless of whether failure to exhaust excusal might be applicable in some limited circumstances, nothing in this record warrants its application in this case. Defendant does not contend that he tried to exhaust any administrative remedies; indeed, he did not appeal to the BIA. On this ground alone, Defendant's collateral attack on his underlying deportation order fails and the motion to dismiss must be denied. *See United States v. Bastide-Hernandez*, 3. F.4th

PAGE 9 – OPINION AND ORDER

1193, 1197 (9th Cir. 2021) ("[F]urther administrative review, and judicial review, if necessary, could theoretically correct an immigration judge's . . . erroneous merits decision."). Still, the Court will address Defendant's argument that the entry of the 2011 deportation order was fundamentally unfair.

## B. Defendant has not shown that entry of the deportation order was fundamentally unfair: there were no due process violations and Defendant did not suffer prejudice

Defendant alleges that the 2011 removal order underlying this section 1326 indictment is invalid because the 2011 proceeding was "fundamentally unfair." To show "fundamental unfairness," Defendant must show both a due process violation and resulting prejudice. *Martinez*, 786 F.3d at 1230. Aliens facing deportation are entitled to due process under the Fifth Amendment to the United States Constitution, encompassing a full and fair hearing and notice of that hearing. *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997). Defendant bears the burden of establishing the due process violation. *See United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014) (*abrogated on other grounds by DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020)).

First, Defendant argues that the Immigration Judge failed to establish an adequate record of his eligibility for voluntary departure relief. ECF 34 at 22. "Because aliens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country, it is critical that the [immigration judge] 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002) (quoting *Jacinto v. INS*, 208 F.3d 725, 733 (9th Cir. 2000)). Defendant points to a regulation directing immigration judges to "inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity

PAGE 10 – OPINION AND ORDER

to make application during the hearing." 8 C.F.R. § 1240.11(a)(2). However, as explained above, Defendant was not apparently eligible for voluntary removal. The information available to the Immigration Judge was that Defendant had been granted voluntary removal in the past, that he had returned to Mexico from the United States, and so he was not eligible for a second voluntary departure. Defendant did not challenge that version of events at the 2011 hearing, only pointing out that he was a minor when he was granted voluntary departure, ECF 34-2 at 6, a fact with no legal significance that required probing by the immigration judge. *See* 8 U.S.C. § 1232(a)(5)(D)(ii) (making "any unaccompanied alien child" eligible for voluntary departure "at no cost to the child"). Defendant has cited no case law—and the Court is not aware of any—holding that an immigration judge must find out about the circumstances of an earlier voluntary departure when the propriety of that departure was not questioned.[4]

*United States v. Melendez-Castro*, 671 F.3d 950 (9th Cir. 2012), is distinguishable. In that case, an immigration judge told a defendant, "I can deny [voluntary departure] in my discretion and, and [sic] even if you were to apply for voluntary departure I wouldn't grant it to

---

[4] Because the Immigration Judge was not required to inquire further into the circumstances of the voluntary departure, this Court addresses Defendant's substantive challenges only briefly in this footnote. Defendant argues that the voluntary departure was invalid because the government paid for his ticket and because he was sent to Mexico City rather than Morelia. As to the ticket payment, while it is true that 8 U.S.C. § 1229c permits voluntary departure "at the alien's own expense," 8 U.S.C. § 1231(e)(3)(C) permits the government to pay the expenses of removal for "an alien who has been granted voluntary departure under section 240B [8 U.S.C. § 1229c] and who is financially unable to depart at the alien's own expense." As to where Defendant was sent in Mexico, the Court notes that the Immigration Judge's order was to Mexico (rather than a specific city). ECF 34-2 at 2. Moreover, the government's point is well taken that applicable laws reference a country, rather than more specific locality, of removal. *See, e.g.*, 8 U.S.C. § 241.15(a); 8 U.S.C. § 1231(b). This Court is troubled by the allegation that INS arranged for a minor to be sent to Mexico City, ECF 34-15, despite being made aware by the Mexican Consulate that his family had been located in Morelia, Michoacán, ECF 34-16. But this is not a defect in the voluntary departure order, which only and properly specified a destination country.

you. I don't grant voluntary departure to anyone convicted of a crime in the United States, so I will be denying any other case of voluntary departure that you may make." *Id*. at 953. The Ninth Circuit held that "[a] reasonable person in [the defendant's] position would have been discouraged from applying for voluntary departure to an extent that it is as if he was told that he did not qualify for this relief." *Id*. at 954. Here, the Immigration Judge did not warn Defendant that she would exercise discretion to deny a form of relief for which he was eligible; she found that he was ineligible because of a prior departure. ECF 34-2 at 6.

Second, Defendant argues that the Immigration Judge incorrectly found that he had waived his right to counsel and his right to appeal the removal order. ECF 34 at 29. "In order for a waiver [of counsel] to be valid, an IJ must generally: (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response." *Arrey v. Barr*, 916 F.3d 1149, 1157 (9th Cir. 2019) (quoting *Tawadrus v. Ashcroft*, 364 F.ed 1099, 1103 (9th Cir. 2004)). Here, the Immigration Judge asked Defendant if he "want[ed] more time to see if [he] c[ould] get some help with [his] case." ECF 34-2 at 4. When the Defendant stated that he did not want more time, the Immigration Judge confirmed: "The court will find that for purposes of today's hearing you have waived your right to an attorney, correct?" *Id*. The Defendant responded, "Yes, I don't want to fight my case." *Id*. Defendant argues that the Immigration Judge asked a leading question "to prompt [his] passive acquiescence to a waiver of his constitutional rights." ECF 34 at 32. The Court disagrees. The Immigration Judge spoke to Defendant in clear language unencumbered by legal jargon, and the Defendant answered clearly. The waiver of the right to counsel was valid.

Similarly, a valid waiver of appeal "must be both 'considered and intelligent.'" *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) (quoting *United States v. Arrieta*, 224 F.3d

1076, 1079 (9th Cir. 2000)) "Obtaining an invalid waiver of the right to appeal a deportation order violates due process." *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014). At the outset of the hearing, the Immigration Judge told Defendant: "If you disagree with any decision the court makes, you have the right to challenge to the court of appeals. You were given a sheet containing your appeal rights." ECF 34-2 at 3. Then, after the Immigration Judge informed Defendant that she would be entering a removal order, she asked, "That is my final decision sir, and do you waive your right to appeal?" *Id*. at 6. Defendant responded affirmatively. *Id*. at 6–7.

Defendant argues that his waiver was equivocal because he immediately followed the affirmative response by pivoting to another topic: "Yes, but I can't reenter the United States legally if my wife claims me or—?" *Id*. at 6. Defendant likens this waiver-with-question to the purported waiver of appellate rights in *Biwot v. Gonzales*, 403 F.3d 1094 (9th Cir. 2005). There, an immigration judge told a defendant, who was also improperly denied counsel, that he could accept the decision as final or he could appeal; the defendant responded, "Your Honor, I accept the decision as final because I cannot do anything right now." *Id*. at 1097. That comment "reveal[ed] a fundamental misunderstanding of the effect of a waiver of appeal . . . he was under the misapprehension that he had no choice but to waive the appeal." *Id.* at 1098. Importantly, there is no indication that the defendant in *Biwot* had received a written explanation of his appeal rights. Here, on the other hand, Defendant had a written version of his appeal rights, ECF 34-2 at 3, and there is no indication that he misunderstood the consequences of waiving them. Defendant asserts that asking the Immigration Judge if he could reenter the country legally if his wife claimed him shows that Defendant had a similar misunderstanding to the one in *Biwot*. The *Biwot* defendant however, apparently did not understand that waiving his appellate rights foreclosed a future *direct* challenge to his deportation order—indeed, he appealed to the BIA. *Id*.

PAGE 13 – OPINION AND ORDER

at 1097. Here, Defendant was asking whether, separate from challenging his deportation order, there was another way in which he could legally reenter the country. ECF 34-2 at 6–7. Better practice would have been for the Immigration Judge to confirm Defendant understood the waiver of appellate rights before answering his question, but this does not rise to the level of a due process violation.

Finally, Defendant argues that the Immigration Judge failed to advise him that he was apparently eligible to withdraw his application for admission. ECF 34 at 38. This argument is unavailing because "[a]n immigration judge may allow only an <u>arriving alien</u> to withdraw an application for admission." 8 C.F.R. § 1240.1(d) (emphasis added). And an arriving alien is one "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. This language is inapplicable to Defendant, who admittedly did not enter the United States as a port-of-entry, but rather "through the brush near San Ysidro, California."[5] ECF 34-3. What is more, Defendant was not detained upon his entry to the United States in California, but six years later in Oregon.[6] *Id*. Because Defendant was facially ineligible to withdraw his application for admission at the time of the hearing, the Immigration Judge did not err in not exploring the possibility with him. *See Lopez-Velasquez*, 629 F.3d at 901.

---

[5] San Ysidro, California is designated as a port-of-entry. 8 C.F.R. § 100.3. But the term port-of-entry refers to the physical immigration facility rather than the broader geographical location designated. *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017).

[6] It is also true that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). An applicant for admission is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival[).]" 8 U.S.C. § 1225(a)(1). Even assuming that Defendant's mere presence in the country made him an applicant for admission, there was no indication that the INS would have consented to allowing withdrawal.

## CONCLUSION

Defendant bears the burden of establishing that the administrative proceeding producing his deportation order violated his due process rights and he has failed to do so. *See Raya-Vaca*, 771 F.3d at 1202. Because he cannot establish that the entry of the deportation order was fundamentally unfair, Defendant's collateral attack of the order underlying this section 1326 prosecution fails as a matter of law. *See* 8 U.S.C. § 1326(d).[7] For these reasons, Defendant's Motion to Dismiss the Indictment is DENIED.

**IT IS SO ORDERED**.

DATED this 21st day of December, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[7] The parties dispute whether Defendant can establish the remaining elements of his collateral attack under 8 U.S.C. § 1326(d). Because Defendant failed to establish that his due process rights were violated in his underlying removal proceeding, this Court need not reach the parties' remaining arguments. *See United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1126 (9th Cir. 2013) (the three requirements outlined in section 1326 "must all be satisfied").

PAGE 15 – OPINION AND ORDER